UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NERRY PATHAK,<br><br>    Plaintiff,<br><br>v.<br><br>SIERRA MEAT COMPANY, et al.,<br><br>    Defendants. | Case No. 17-cv-00102<br><br>Case No. 17-cv-1546<br><br>**ORDER<br>ON SANCTIONS<br>AND<br>CONSOLIDATION OF CASES** |
| ANSHU BHARAT PATHAK,<br><br>    Cross Complainant,<br><br>v.<br><br>NERRY PATHAK, et al.,<br><br>    Cross Defendants. | |

**I.    INTRODUCTION**

    Before the Court is Defendant / Cross Defendant Sierra Meat Company's Motion for a Temporary Restraining Order (ECF 52) filed in case No. 17-cv-00102-RFB-GWF. For the reasons stated below, the Court grants relief pursuant to its inherent powers. The Motion for a Temporary Restraining Order is therefore denied.

    The above-captioned cases are also ordered consolidated.

. . .

. . .

**BACKGROUND**

On January 11, 2017, Plaintiff Nerry Pathak ("Nerry") filed a complaint (ECF 1) against Sierra Meat and other defendants, including Anshu Pathak. On March 15, 2017, Nerry filed a First Amended Complaint (ECF 7). On April 6, 2017, Anshu answered the complaint and filed a cross-complaint (ECF 10). On May 19, 2017, Anshu filed the First Amended Cross-Complaint (ECF 29). Sierra Meat categorically denies the allegations contained in the First Amended Complaint and the First Amended Cross-Complaint. Sierra Meat has filed motions to dismiss both the First Amended Complaint and the First Amended Cross-Complaint (ECF 14 and ECF 43).

Defendant / Cross Defendant Sierra alleges that Anshu Pathak has repeatedly contacted employees and officers directly, in spite of multiple admonitions to communicate only through counsel. Defendant / Cross Defendant Sierra meet seeks a temporary restraining order enjoining Anshu Pathak from (1) directly contacting or communicating with by any means whatsoever Sierra Meat or any of its officers, directors, and employees, including, but not limited to, Jonathan Mosbacher and Chris Flocchini, other than through Sierra Meat's counsel; and (2) being physically present within 100 yards of Sierra Meat's offices or residences or any of Sierra Meat's directors, officers, and employees, including, but not limited to Jonathan Mosbacher and Chris Flocchini.

On June 30, 2017, the Court issued a minute order setting a hearing on the Motion for a Temporary Restraining Order for July 5, 2017, at 11:30AM. On the morning of July 5, 2017, in a communication to opposing counsel, Anshu Pathak stated that he could not attend the hearing "due to [his] health." He did not appear at the hearing or provide any further explanation. Anshu Pathak provided no substantive response to the Motion in that communication, or in any filing with the Court. The Court therefore credits and accepts the credible allegations in the Motion for a Temporary Restraining Order regarding Anshu Pathak's conduct, which are supported by declarations and exhibits identified as copies of the email communications from Anshu Pathak to various Sierra employees. The Court also finds that Anshu Pathak has not established a credible reason for not attending the hearing on July 5th.

**II. FACTUAL FINDINGS**

The Court credits and finds the following facts from the Motion for a Temporary Restraining Order.

Since the filing of Anshu's cross-claim, Anshu has repeatedly contacted the directors, officers and employees of Sierra Meat, including sending nearly 100 emails and threatening to confront the directors, employees and officers at their work place or at their homes in front of their families. From April 20, 2017 through May 31, 2017, Anshu sent 70 emails to Sierra Meat's officers, directors, and employees. Mot. for TRO, Ex. A at ¶ 4. From June 7, 20173 to June 27, 2017, Anshu sent 23 additional emails to Sierra Meat's officers, directors and employees. Id. at ¶ 5.

In response to Anshu's communications, counsel for Sierra Meat has repeatedly demanded that Anshu communicate solely with counsel, who has been designated by Sierra Meat to handle this litigation matter and to field all correspondence related to this lawsuit from Anshu and Nerry, both of whom represent themselves. On April 20, 2017, Sierra Meat's counsel notified Anshu that his correspondence to Sierra Meat's employees must stop and demanded that Anshu communicate directly with counsel and counsel only. Ex. A at ¶¶ 6-7. Anshu, however, did not cease his communications, but rather sent fourteen additional emails in the next six days. Id. at ¶ 8. As a result, counsel for Sierra Meat again demanded that Anshu comply with Sierra Meat's request to stop emailing its employees and to communicate only with its designated representative. Id. at ¶¶ 9-11. Counsel notified Anshu that, if necessary, the issue would be raised before this Court. Id. at ¶¶ 10-11.

Anshu continued sending unsolicited emails to Sierra Meat's employees in May 2017. On May 11, 2017, counsel for Sierra Meat, for the third time, respectfully demanded that Anshu refrain from further harassing Sierra Meat's officers and employees with emails and to direct all future correspondence to counsel. Ex. A at ¶¶ 12-13. On May 23, 2017, during a direct telephone conference with Anshu, counsel for Sierra Meat again demanded that Anshu stop contacting the employees of Sierra Meat to which Anshu agreed. Id. at ¶¶ 15. Anshu continued, however, to make unwarranted contact. Id. at ¶ 16. On May 25, 2017, counsel for Sierra Meat, confirmed in an email Anshu's agreement to communicate solely with counsel, not Sierra Meat, its officers, directors,

and employees, yet Anshu continued with his harassing communications. Id. at ¶¶ 17-18.

On May 30, 2017, during a hearing regarding briefing deadlines for Sierra Meat's motion to dismiss, counsel for Sierra Meat raised with Magistrate Judge George W. Foley, Jr. counsel's concern regarding Anshu's repeated and improper communications with Sierra Meat's officers and employees. See ECF 35. Although Anshu did not attend or participate in the hearing, counsel for Sierra Meat notified the Court that Anshu had been repeatedly advised to communicate directly with counsel and not Sierra Meat. See Id. The next day, counsel for Sierra Meat, for the sixth time, demanded that Anshu conduct himself in a professional matter and stop emailing Sierra Meat's employees. Ex. A at ¶¶ 19-20. Counsel also reminded Anshu of his previous agreement to abide by this demand. Id. at ¶¶ 20-21.

Finally, on June 7, 2017, counsel for Sierra Meat again reiterated to Anshu the request to stop contacting Sierra Meat or its employees and continuing to harass them. Ex. A at ¶¶ 22-24. Anshu responded, acknowledging that "[i]t's a good idea that I deal directly with one person." Id. at ¶¶ 23-24. Nevertheless, Anshu continues his improper communications with individuals connected to Sierra Meat.

Most recently, on June 27, 2017, Anshu forwarded to Sierra Meat's counsel, officers, directors, and employees an email exchange he had earlier that morning with one of Sierra Meat's alleged customers. Ex. A at ¶¶ 25, 29. In the email to the purported customer, Anshu disparaged Sierra Meat stating, "Sierra has problems selling their garbage meats and small retailers like you are being stabbed." Id. at ¶¶ 26, 29. Later that morning, Anshu sent email correspondence to Sierra Meat's counsel, officers, directors, and employees and his brother, Nerry, encouraging Nerry to file his second amended complaint so that Anshu could then file his answer to the same. Ex. A at ¶¶ 27, 29. In the afternoon on that same day, June 27th, Anshu threatened to personally confront the employees of Sierra Meat at their place of business and videotape them being served with Nerry's second amended complaint. Ex. A at ¶¶ 30, 33. Anshu also attempted to confirm the personal residence of Mr. Flocchini through Sierra Meat's counsel and, when Anshu did not receive a response within 8 minutes, he forwarded the email containing the residence directly to Mr. Flocchini inquiring, "[i]s this your address to serve you or [sic] you want me to serve you at

your office?" Id. at ¶¶ 31, 33. Almost immediately thereafter, Anshu sent another email to Mr. Mosbacher inquiring whether he wanted to be personally served by Anshu at his residence or at his office. Id. at ¶¶ 32-33. Anshu also forwarded the home address of Rich Jersey, another employee of Sierra Meat, giving the indication that he too may be confronted at his home. Id. at ¶¶ 34-35.

Moreover, Anshu has sent correspondence hinting at possible physical violence or threats. See Ex. B at ¶¶ 6-7. In a March 5, 2014 email to Jonathan Mosbacher, Anshu Pathak wrote the following:

> "Matt, stay away from me. Do not text me anymore. I know who I am. You should know that that I am a FELON for beating up my son. I have serious anger management problem with liars, crooks, alcoholics and drugs. Yes, I went to jail for 8 months for beating up my son and I did the right thing to stop him from the drugs. After his mom took the restraining order against me .... she lost the son. My son committed suicide in 2011. She was not able to stop him from drugs. I told the police to arrest him and I also told the Judge and the Jury that if he will take drugs again, I will beat him up again. I am Anshu Pathak, stay away from me. If you will talk about my son again in person, I will go back in jail again. I have no problem with that. Do you get it? Never ever talk about my son."

Therefore, upon receiving the June 27, 2017 email correspondence—threatening to personally confront employees at their place of business and videotape them being served with Nerry's second amended complaint—and in light of Anshu's incessant prior communications and his prior acknowledgment of having a history of violence, Sierra Meat's officers, directors, and employees became increasingly uncomfortable with the threat of Anshu personally showing up at their work place or homes where their families live, and they reasonably found such threats to be harassing and intimidating. See Ex. B at ¶¶ 6-8 and Ex. C at ¶ 6.

### III. LEGAL STANDARD

Sierra seeks a temporary restraining order pursuant to NRS 33.270, a Nevada workplace harassment statute. However, Plaintiff does not seek an injunction pursuant to any complaint; or

relief meant to preserve a status quo relevant to the merits of the case, but rather asks the Court to act to end litigation misconduct. For a federal court to grant a temporary restraining order or preliminary injunction, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 636 (9th Cir. 2015). Whatever the potential applicability of the asserted Nevada statute, the Court finds that this dispute may be addressed pursuant to the Court's inherent powers, and declines to consider an injunction under NRS 33.270.

There exists a "well established" principle that "[d]istrict courts have inherent power to control their dockets." Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc., 146 F.3d 1071, 1074 (9th Cir. 1998) (internal quotation marks omitted). "All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." Aloe Vera of Am., Inc. v. United States, 376 F.3d 960, 964-65 (9th Cir. 2004). "Courts have the ability to address the full range of litigation abuses through their inherent powers. While it is preferable that courts utilize the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, courts may rely upon their inherent powers to sanction bad faith conduct even where such statutes and rules are in place. F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc., 244 F.3d 1128, 1136 (9th Cir. 2001) (internal citations and quotation marks omitted).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178 (9th Cir. 2003)

"Civil penalties must either be compensatory or designed to coerce compliance. In contrast, a flat unconditional fine totaling even as little as $50 could be criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance, and the fine is not compensatory. This is so regardless of whether the non-compensatory fine is payable to the court or to the complainant. Whether the fine is payable to the complainant may, however, be one relevant factor in determining whether the fine is compensatory or punitive." In re Dyer, 233 F.3d 1178, 1192 (9th Cir. 2003) (internal citations and quotation marks omitted).

## IV. DISCUSSION

The Court finds that Anshu Pathak has engaged in bad faith litigation/discovery conduct. The Court finds that Anshu Pathak has repeatedly initiated direct communications via email, in spite of numerous warnings to communicate only with counsel. Particularly in light of the prior, March 2014 email to Jonathan Mosbacher, an employee of Sierra, the Court finds the constant inappropriate messages to be intentionally harassing and intimidating. Although Anshu Pathak is a pro se litigant, he was repeatedly advised by opposing counsel not to directly communicate with Sierra officers or employees yet did not cease communications or bring the issue to the Court. Moreover, he acknowledged the propriety of communicating with a single representative before continuing to direct communications, including disparaging remarks not directly related to the litigation, to employees.

The Court further finds that Anshu Pathak has consistently engaged in unprofessional, misleading and abusive discovery conduct through his harassing and intimidating contacts. He has made implied threats of violence and suggested that he will physically confront employees of Sierra Meat at their homes or place of business. The Court does not find that he will conduct himself in an appropriate, professional and civil manner without a court order directing him to do so. Even with a court order, this Court is not confident that he will modify his behavior. Therefore, pursuant to the Court's inherent power, the Court orders Anshu Pathak to refrain from contacting or physically encountering employees of Sierra Meat except through Sierra Meat's counsel, and to cease any communications that contain implied or explicit threats or intimidating language. The Court is further ordering Anshu Pathak to appear at a hearing on **July 28, 2017 at 4:00 p.m.** before this Court to confirm that he will conduct himself in a civil manner in this case and to confirm that he will actually participate in a meaningful way in discovery. His failure to appear at the hearing set in this Order can lead to sanctions, up to and including the entry of judgement against him and the dismissal of his claims in this case.

The Court does not find his proffered reason for failing to appear at the hearing on July 5, 2017 to be credible at this time.

Anshu Pathak will have an opportunity at the July 28 hearing to argue against and present

evidence contrary to the factual findings regarding his conduct in this Order.  If the Court finds his arguments or proffered information/evidence to be credible, it will reconsider its findings in this Order.

## V. CONSOLIDATION OF CASES

On June 1, 2017, the Plaintiff in this case, filed a second case against three defendants named in the instant case, and adding Armand Agra, Inc., as an additional defendant. Case No. 17-cv-01546-RFB-NJK, ECF No. 1. Armand Agra has submitted a certificate of interested party in this case, indicating that it owns ten percent or more of Sierra Meat Company's stock. Case No. 17-cv-00102, ECF No. 15. Because both cases involve the same dispute, the Court has determined that the actions are related and that there is good cause to consolidate them. Further, consolidation will promote judicial efficiency, avoid duplicative filings by the parties, and will not result in prejudice to the parties.

## VI. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant / Crossclaimant **Anshu Pathak** shall not communicate, in person, by email, or by any other means, with any employees, officers, directors, contractors, or agents thereof, of Sierra Meat Company, but shall direct all communications to counsel for Sierra Meat, Mr. Matthew B. Hippler. Any future violations of this Order may result in monetary sanctions, entry of judgment against Anshu Pathak, dismissal of his claims and/or referral for criminal prosecution for contempt of court.

**IT IS FURTHER ORDERED** that a hearing regarding Anshu Pathak's discovery conduct in this case is set for **July 28, 2017 at 4:00 p.m.** in courtroom 7D. **<u>Anshu Pathak is ordered to appear at this hearing</u>**.  Failure to appear at this hearing may lead to monetary sanctions, the entry of judgement against Anshu Pathak, the dismissal of his claims, or some combination or all of these sanctions.

**IT IS FURTHER ORDERED** that case no. 2:17-cv-01546-RFB-NJK is CONSOLIDATED with case no. 2:17-cv-00102-RFB-GWF. These cases are consolidated on the

basis of judicial economy and commonality of subject. Case no. 2:17-cv-00102-RFB-GWF shall be the lead case and case no. 2:17-cv-01546 shall be added as a member case. All further documents shall be filed in the lead case 2:17-cv-00102-RFB-GWF and shall bear that case number.

**IT IS FURTHER ORDERED** that a <u>**status hearing on BOTH these cases is set for July 28, 2017 at 4:00 p.m. in courtroom 7D.**</u> <u>ALL PARTIES</u> are ordered to appear. **Failure to appear at this status conference may lead to monetary sanctions, entry of judgement against the nonappearing party, the dismissal of claims of the nonappearing party, or some combination or all of these sanctions.**

**IT IS FURTHER ORDERED** that case no. 2:17-cv-01546-RFB-NJK is REASSIGNED to Magistrate Judge Foley for all further proceedings.

DATED this <u>6</u>th day of July, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**